U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 1 2 2013

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RHONDA BESHEARS, ET AL.,      §
                              §
        Plaintiffs,           §
                              §
VS.                           §    NO. 4:13-CV-275-A
                              §
PILGRIM'S PRIDE CORPORATION,  §
                              §
        Defendant.            §

MEMORANDUM OPINION
and
ORDER

Now before the court for decision is the motion to dismiss
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure
or alternative motion for a more definite statement pursuant to
Rule 12(e) of the Federal Rules of Civil Procedure, filed in the
above-captioned action by defendant, Pilgrim's Pride Corporation.
Plaintiffs, Rhonda Beshears, Andrea Compton, Diantha Crick,
Jennifer Croslin, Johnny Crouch, Lavonna Davis, Johnnie Fletcher,
Genafer Foree, Jeffrey Long, Jessica Taylor, Matilde Taylor,
Paula Taylor, Ruth Verhegghe, Augustina Wisdom, Terry D. Beshears
and Rhonda Beshears as parents and/or natural guardians on behalf
of B.B., B.S., and D.S., minor children, and Dustin Lee Taylor
and Jessica Taylor, as parents and/or natural guardians on behalf
of C.T., a minor child, filed a response, and defendant filed a

reply.   Having now considered all of the parties' filings, the

complaint by which plaintiffs initiated this action, and the

applicable legal authorities, the court concludes that the motion

to dismiss should be granted, and the alternative motion for more

definite statement should be denied.

I.

### Plaintiffs' Claims and the Motion to Dismiss

A.   Plaintiffs' Claims

Plaintiffs define the nature of this case as a negligence

action.   In the complaint, plaintiffs alleged that defendant's

employees were exposed to Methicillin-Resistant Staphylococcus

Aureus ("MRSA"), a potentially life-threatening communicable

disease, at their place of employment.[1]   The employees

unknowingly carried the infection home on their skin and

clothing, thus exposing their families to the disease.   As a

---

[1]On November 2, 2012, in a related case, In re: Pilgrim's Pride Corp., et al., Civil Case Number 4:10-CV-292-Y, Judge Means concluded that the personal injury claims of the employee-claimants were within the scope of applicable workers' compensation laws, and ordered that those claims be adjudicated in the appropriate workers' compensation forums in Arkansas and West Virginia. Judge Means also ordered the non-employee claimants by February 28, 2013, to file a separate action in this court. The instant action followed. Because the parties in this action refer to, and rely, papers filed and rulings made in Case Number 4:10-CV-292-Y, the court takes judicial notice of the proceedings in that case. MacMillan Bloedel Ltd. v. Flintkote Co., 760 F.2d 580, 587 (5th Cir. 1985).

result, plaintiffs also have contracted, or may contract, MRSA.[2]

The complaint alleged that the infected spouses had suffered substantial damage to their quality of life, including loss of companionship and loss of consortium; the contraction of a potentially life-threatening infection; having to live with a potentially permanent source of MRSA infection; pain, disfigurement, and disruption of life caused by recurring MRSA outbreaks; and constant, ongoing concern and apprehension over those possible reoccurrences. Similar damages were alleged by the non-infected spouses and the infected children.

B.   The Motion to Dismiss

Among other grounds for dismissal, the motion to dismiss sought a ruling that the exclusive-remedy provision of the Workers' Compensation Law barred plaintiffs' claims for loss of companionship, loss of consortium, and the drawback of living with a potentially permanent source of MRSA infection.[3]   However,

---

[2]The complaint groups plaintiffs into three categories: Infected Spouses who have contracted MRSA; Infected Children who have contracted MRSA; and Non-Infected Spouses who have not contracted MRSA. Because the court is dismissing the claims of all the plaintiffs, it is immaterial which plaintiffs were in each category.

[3]Defendant's motion refers to the plaintiffs' claims as "derivative" of the employees' claims. As the court explained in the telephone conference/hearing held June 12, 2013, in order to more accurately reflect the statutory language, the court will instead refer to the plaintiffs' claims as arising on account of the employees' injuries.

during a telephone conference/hearing held June 12, 2013, the
court informed the parties that it was <u>sua</u> <u>sponte</u> extending the
motion to dismiss to contend that all of the elements of damages
alleged by plaintiffs in the complaint are barred by the
exclusive-remedy provision of the Workers' Compensation Law.[4]

## II.

### Legal Standards Applicable to Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests."
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted). Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than

---

[4]During the June 12, 2013 telephone conference, after informing the parties that it was extending
the motion to dismiss to contend that all elements of damages are barred by the exclusive-remedy
provision, the court indicated it would afford plaintiffs ten days in which to file a response. However,
plaintiffs declined the court's invitation to file a response.

simply allege legal conclusions or recite the elements of a cause of action.  <u>Twombly</u>, 550 U.S. at 555 & n.3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible.  <u>Id.</u>  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 557).

III.

<u>Analysis</u>

A.   <u>Defendant's "Exclusive-Remedy" Argument</u>

The complaint alleges that the plaintiffs' employee-family members contracted MRSA "at their place of employment," Compl. at 2, thus conceding that the employees' claims arose in the course

5

and scope of their employment.[5]  Consequently, defendant argues,

the exclusive-remedy provision of the Workers' Compensation Law,

section 11-9-105(a), now bars plaintiffs' claims.[6]

B.   Plaintiffs' Response

The gist of plaintiffs' response is as follows:  Section 11-9-102(4)(A) of the Workers' Compensation Law defines "compensable injury" and requires that the injury be either "an accident or one of a specific list of diseases, neither of which include MRSA." Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) or, in the Alternative, Mot. for More Definite Statement at 7.  Additionally, the Workers' Compensation Law defines the term "occupational disease," but also provides that:

> No compensation shall be payable for any contagious or infectious disease unless contracted in the course of employment in or immediate connection with a hospital or sanitorium in which persons suffering from that disease are cared for or treated.

Id. (citing Ark. Code Ann. § 11-9-601(e)(2)).  This specific

---

[5]Defendant also relies on Judge Means's previous determination that the employees' MRSA-related claims are within the scope of the Workers' Compensation Law.

[6]Plaintiffs contend that defendant is estopped from asserting the exclusive-remedy bar of section 11-9-105(a) because defendant previously urged Judge Means to retain jurisdiction of plaintiffs' claims. As the court informed the parties during the telephone conference/hearing held June 12, 2013, the court is not persuaded by plaintiffs' estoppel argument.

exclusion, plaintiffs argue, overrules the more general

statements of compensability found elsewhere in the Workers'

Compensation Law.

The implication in plaintiffs' response is that although the

complaint alleged that the employees contracted MRSA at their

place of employment, because that employment was not in a

hospital or sanitorium, the MRSA infections are not covered

"occupational diseases" under section 11-9-601.  And because the

employees' MRSA infections are also not included in the

definition of "compensable injury" in section 11-9-102(4)(A), the

employees' MRSA infections--although acquired at work--are not

covered by the Workers' Compensation Law.  Because the employees'

MRSA infections are not covered by workers' compensation,

plaintiffs maintain that the exclusive-remedy provision of

section 11-9-105(a) cannot bar their claims.  The court will

address plaintiffs' arguments in detail in section D, _infra_.

C.   <u>The Exclusive-Remedy Provision</u>

The exclusive-remedy provision of the Workers' Compensation

Law, section 11-9-105(a), states in pertinent part:

> (a) The rights and remedies granted to an employee
> subject to the provisions of this chapter, on account
> of injury or death, shall be exclusive of all other
> rights and remedies of the employee, his legal
> representative, dependents, next of kin, or anyone
> otherwise entitled to recover damages from the
> employer, . . . .

7

Ark. Code Ann. § 11-9-105(a).  To properly consider whether

section 11-9-105(a) bars plaintiffs' claims requires an

understanding of that provision in light of the overall purpose

of the workers' compensation system.

Establishment of the workers' compensation system

represented a policy decision by the State of Arkansas to shift

the burden of work-related injuries from employers and employees

to the public at large, virtually eliminating any question of

fault.  Brown v. Finney, 932 S.W.2d 769, 771 (Ark. 1996).  Hence,

the Workers' Compensation Law was intended to mutually benefit

employers and employees.  Hughes v. Hooker Bros. & McKenzie Road

Serv., Inc., 374 S.W.2d 355, 357 (Ark. 1964).  Consistent with

that intent, the exclusive-remedy provision

> mirrors the general purpose behind our Workers'
> Compensation Act . . . . With the passage of such
> statutes, employers gave up the common-law defenses of
> contributory negligence, fellow servant, and assumption
> of the risk and, likewise, employees gave up the chance
> of recovering unlimited damages in tort actions in
> return for certain recovery in all work-related cases
> . . . . In other words, the exclusive benefits
> provision of our workers' compensation law favors both
> the employer and the employee, and thus we take a
> narrow view of any attempt to seek damages beyond that
> favored, exclusive remedy.

Brown, 932 S.W.2d at 771 (internal citations omitted).

Consequently, the sole remedy for an employee with an injury

determined to fall under the Workers' Compensation Law is to file

a claim for such benefits.

Assuming for purposes of this section that the employees' MRSA infections are "injuries" under the Workers' Compensation Law, the policies underlying the exclusive-remedy provision must also foreclose any recovery for plaintiffs. By its plain language, section 11-9-105(a) establishes that workers' compensation benefits are the exclusive remedy for the "employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer." Ark. Code Ann. § 11-9-105(a) (emphasis added). Or, as the Arkansas Supreme Court phrased it, "[g]enerally, an employer who has secured for its employees the benefits of workers' compensation is immune from liability for damages in a tort action brought by an injured employee, his legal representative, dependents, and next of kin." Intents, Inc. v. Southwestern Elec. Power Co., 376 S.W.3d 435, 439 (Ark. 2011). Nothing further is needed, in the court's view, to persuade it that section 11-9-105(a) bars plaintiffs' claims against defendant. To conclude otherwise would defeat the purpose of workers' compensation by limiting recovery for injured employees to such benefits, while exposing employers to tort liability for related claims by family members.

Nevertheless, the court also finds useful the discussion and analysis of workers' compensation exclusive-remedy provisions found in Larson's Workers' Compensation Law, which divides such provisions into two general categories:[8] the "narrow" type, "which says that the employee's rights under the workers' compensation act shall be 'in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer,'" and the "broad" type, which excludes actions by the employee, his or her personal representatives, spouse, parents, dependents, next of kin, or "anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death." 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 101.01 (2012) (hereafter "Larson's") (footnotes and citations omitted). Given the language of section 11-9-105(a), the Arkansas exclusive-remedy provision would appear to fall within the latter "broad" category.

In discussing the "broad" type of workers' compensation

---

[8]The Arkansas Supreme Court apparently also finds Larson's Workers' Compensation Law persuasive, given the numerous references to it in that court's opinions. See, e.g., Automated Conveyor Systems v. Hill, 208 S.W.3d 136, 138-9 (Ark. 2005); VanWagoner v. Beverly Enterprises, 970 S.W.2d 810, 812 (Ark. 1998); Coats v. Gardner, 970 S.W.2d 802, 804 (Ark. 1998);  Sontag v. Orbit Valve Co., 672 S.W.2d 50, 51 (Ark. 1984); Travelers Ins. Co. v. Smith, 947 S.W.2d 382, 385-6 (Ark. 1997).

statute, "which is by far the most common type of exclusive

remedy clause," id. at § 101.02, Larson's observed that

> the cases with near-unanimity have barred suits by
> husbands for loss of the wife's services and
> consortium, by wives for loss of the husband's services
> and consortium, by parents for loss of minor children's
> services, by dependent children, and by next of kin
> under wrongful death statutes.

Id. (footnotes omitted).  Such exclusive-remedy provisions have

been held to bar any remedy, even if the family member "gets no

valuable compensation rights in place of the common-law or

statutory death-action rights destroyed."  Id. (footnote

omitted).  Although the court has been directed to no Arkansas

authority considering loss of consortium or similar causes of

action in the context of a workers' compensation claim, the

logical conclusion, considering the foregoing discussion, is that

the exclusive-remedy provision of section 11-9-105(a) would bar

such claims.

D.    Arkansas Workers' Compensation Law Encompasses
      the Employees' MRSA Infections

The court now turns to plaintiffs' contention that the

employees' MRSA infections are not covered by the Workers'

Compensation Law, even though the employees were exposed to MRSA

in the course and scope of their employment.  Section 11-9-

102(4)(A) defines "compensable injury" as follows:

(4)(A) "Compensable injury" means:

(i) An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, . . . arising out of and in the course of employment and which requires medical services or results in disability or death.  An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence;

(ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

(a) Caused by rapid repetitive motion.  Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition;

(b) A back or neck injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence; or

(c) Hearing loss which is not caused by a specific incident or which is not identifiable by time and place of occurrence;

(iii) Mental illness as set out in § 11-9-113;

(iv) Heart or cardiovascular injury, accident, or disease as set out in § 11-9-114;

(v) A hernia as set out in § 11-9-523; or

(vi) An adverse reaction experienced by any employee of the Department of Health or any employee of a hospital . . . related to vaccination with Vaccinia vaccines for smallpox . . . .

Ark. Code Ann. § 11-9-102(4)(A).  Plaintiffs are correct in their

initial premise:   section 11-9-102(4)(A) cannot be read to

include infection with MRSA in any definition of "compensable

injury."

The inquiry does not end there, however.   Section 11-9-

102(4)(C) also provides that "[t]he definition of 'compensable

injury' as set forth in this subdivision (4) shall not be deemed

to limit or abrogate the right to recover for . . . occupational

diseases as set forth in § 11-9-601 et seq."   The apparent intent

of the statute was thus not to allow the definition of

"compensable injury" to prevent an employee's recovery of

workers' compensation benefits for a covered occupational

disease.

Section 11-9-601(e)(1)(A) defines "occupational disease" to

include "any disease that results in disability or death and

arises out of and in the course of the occupation or employment

of the employee . . . ."   Ark. Code Ann. § 11-9-601(e)(1)(A).

Elsewhere, section 11-9-601 makes clear how an occupational

disease is to be viewed in the context of the Workers'

Compensation Law:

> Where an employee suffers from an occupational disease
> as defined in this subchapter and is disabled or dies
> as a result of the disease and where the disease was
> due to the nature of the occupation or process in which
> he or she was employed . . ., then the employee, or, in
> case of death, his or her dependents, shall be entitled
> to compensation as if the disablement or death were

13

<u>caused by injury</u>, except as otherwise provided in this subchapter.

Ark. Code Ann. § 11-9-601(a) (emphasis added).  Thus, under section 11-9-601(a), an employee suffering from an occupational disease that otherwise meets the requirements of section 11-9-601[9] is entitled to workers' compensation benefits just as if the occupational disease were, instead, a "compensable injury."

Perhaps recognizing that all of the foregoing defeats their contention that the work-acquired MRSA infections are not covered by the Workers' Compensation Law, plaintiffs turn for support to section 11-9-601(e)(2), which proscribes compensation for any "contagious or infectious disease unless contracted in the course of employment in or immediate connection with a hospital or sanitorium" where persons suffering from that disease are treated.  Plaintiffs' reliance on section 11-9-601(e)(2) is unavailing.  Although the court's research has revealed a dearth of applicable authority, one Arkansas appellate court did consider section 11-9-601(e)(2), in <u>Osmose Wood Preserving v. Jones</u>, 843 S.W.2d 875, 878 (Ark. App. 1992).  That court observed that the original Workers' Compensation Law included a schedule

---

[9]Section 11-9-601, as well as other provisions of subchapter 6, includes certain other restrictions and limitations on compensation for occupational diseases.  Other than section 11-9-601(e)(2), those restrictions are not at issue in this action.

of compensable diseases that covered:

> 12. Infectious or contagious disease contracted in
> the course of employment in, or in immediate
> connection with, a hospital or sanatorium in which
> persons suffering from such disease are cared for
> or treated.

Id.  The appellate court further noted that

> [i]n 1976 . . . the occupational disease section, was
> amended by Act 1227.  The listing of compensable
> diseases was discarded; however, a provision was
> maintained to protect hospital or sanatorium workers
> under § 81-1314(a)(5)(ii), which is now codified at
> Ark. Code Ann. § 11-9-601.  When reviewing the
> statutory history of this provision, we observe that
> the category set out in § 81-1314(5)(12) (1948) was
> inclusive in nature and provided coverage for
> contagious or infectious diseases which hospital or
> sanatorium workers contracted through their employment.
> <u>Section 11-9-601(e)(2) was not meant to exclude
> coverage for employees who contract an infection in the
> course of their employment because they do not work in
> a hospital or sanatorium</u>, but rather was to protect
> hospital and sanatorium workers.

Id. (emphasis added).  Hence, section 11-9-601(e)(2) was

intended to be a rule of inclusion for certain infections

contracted by certain categories of hospital employees, rather

than a broad rule of exclusion of coverage as to all others.

In considering plaintiffs' argument, the court must bear in

mind that "[p]rovisions of the Workers' Compensation Act are to

be construed liberally in favor of the claimant."  Id.  A liberal

construction of all of the foregoing leads to but one conclusion:

a contagious disease or infection such as MRSA, that otherwise

15

meets the requirements of section 11-9-601, is covered by the
Workers' Compensation Law.

A conclusion that the employees' MRSA infections are covered
by workers' compensation under sections 11-9-102(4)(C) and 11-9-
601 does not fully resolve the matter, however.  The question
remains whether the exclusive-remedy provision of section 11-9-
105(a) limits the remedies of an employee suffering from an
occupational disease or infection such as MRSA.  The question
arises due to the language of section 11-9-105(a) that makes
workers' compensation benefits the sole source of recovery for an
employee "on account of <u>injury or death</u>."  Ark. Code Ann. § 11-9-
105(a) (emphasis added).  No mention is made in section 11-9-
105(a) of any exclusive remedy for an employee whose claim
involves an occupational disease or infection.

In light of the discussion in sections III.C. and III.D,
<u>supra</u>, of this memorandum opinion and order, as well as
consideration of the overall purpose of the Workers' Compensation
Law, the court can conceive of only one reasonable conclusion:
that the legislature intended for section 11-9-105(a) to
establish workers' compensation benefits as the exclusive remedy
for an employee's occupational disease or infection to the same
extent as any accidental injury or death.  Stated differently,
the intent, for purposes of section 11-9-105(a), was for an

occupational disease or infection to be the legal equivalent of an injury under the Workers' Compensation Law. Mandating the exclusive remedy of workers' compensation for some, but not all, of the types of claims included within the Workers' Compensation Law would result in a bifurcated system: employees with occupational diseases or infections could pursue claims against an employer under either the Workers' Compensation Law or in a separate tort action, while employees suffering any other injury would be required to accept only workers' compensation benefits.

Such an absurd and inconsistent result is contrary to the express purpose and function of the Workers' Compensation Law, that is, to substitute workers' compensation benefits for "any and all liability" of the employer arising out of a compensable injury--or, in this case, a compensable disease or infection. Odom v. Ark. Pipe & Scrap Material Co., 187 S.W.2d 320, 321 (Ark. 1945.); accord Vann v. Dow Chem. Co., 561 F. Supp. 141, 145 (D.C. Ark. 1983) ("So long as the accidental injury, occupational disease or infection arises out of and in the course of the employment, the Workers' Compensation Act affords the exclusive remedy."). As discussed, the exclusive-remedy provision "favors both the employer and the employee," to the extent that courts "take a narrow view of any attempt to seek damages beyond that favored, exclusive remedy." Brown, 932 S.W.2d at 771.

17

Accordingly, the court finds that the Workers' Compensation Law provides the exclusive remedy for the "employee, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer" on account of an employees' occupational disease or infection.  Any other outcome would expose employers to the type of liability from which the Workers' Compensation Law was intended to shield them.

E.    Plaintiffs' Authority Fails to Support Their Claims

Having concluded that section 11-9-105(a) bars plaintiffs' recovery for an occupational disease or infection, the court turns its attention to the only authority cited by plaintiffs pertaining to that subject.  Plaintiffs rely on Travelers Insurance Co. v. Smith, 947 S.W.2d 382 (Ark. 1997), to support the proposition that section 11-9-105(a) does not bar a plaintiff's civil action if the Workers' Compensation Law fails to provide a remedy for the alleged wrong.  However, Travelers is distinguishable from, and does not support, plaintiffs' claims.

In Travelers, the plaintiff, a widow, sued the insurance company and its claims adjuster, alleging that the adjuster's misrepresentations to her delayed the embalming of her husband's body, with the consequence that she was unable to hold an open-casket funeral.  947 S.W.2d at 383.  The plaintiff asserted

18

claims of misrepresentation and outrage,[10] and claimed that the defendants' conduct had caused her severe and extreme mental anguish. Id. The defendants argued that the plaintiff's claims were barred by section 11-9-105(a). However, the court was unable to construe the plaintiff's claims as "an aggravation of an initial, compensable injury suffered by her husband." Id. at 385. Instead, because the plaintiff's claims were based on a separate tort, independent of any workers' compensation claim, the plaintiff was allowed to proceed. Id. at 386.

Here, in contrast, none of the plaintiffs' claims are based on any separate, independent tort. Rather, all of the plaintiffs' claims arise from, are related to, or are a continuation or aggravation of an "initial, compensable injury" suffered by the employee-spouse or employee-parent. Consequently, as discussed previously, the exclusive-remedy provision of section 11-9-105(a) bars plaintiffs' claims.

It has not escaped the court's attention that plaintiffs have directed the court to no authority where the spouse or children of an injured employee successfully asserted the types of claims against a family member's employer as plaintiffs have asserted here. As noted previously, the "purpose and effect" of

---

[10]In contrast, the plaintiffs here did not allege claims of outrage, but alleged only negligence.

19

the Workers' Compensation Law "was to substitute, as to employment embraced within its terms, the liability created by it for any and all liability of the master arising from the death or injury of his servant." Odom, 187 S.W.2d at 321. Consequently, liability under the Workers' Compensation Law "is the only liability against the employer that may arise out of the death or injury of an employee subject to the Act." Id. (emphasis added). By establishing a workers' compensation system, the State of Arkansas chose to accept "the quid pro quo in which the sacrifices and gains of employees and employers are to some extent put in balance . . . ." Larson's, § 100.01. Here, the result of that balance is that plaintiffs' claims are barred by the exclusive-remedy provision of section 11-9-105(a).

* * * *

In considering the complaint in light of the standards required under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court concludes that plaintiffs have pleaded facts that conclusively show they have no plausible right to relief. Iqbal, 556 U.S. at 679. By alleging that the employees were exposed to MRSA at their place of employment, and that plaintiffs' exposure to MRSA resulted from the employees' work-related exposure, plaintiffs have pleaded themselves out of court due to the exclusive-remedy provision of section 11-9-105.

20

IV.

Order

Therefore,

The court ORDERS that the motion to dismiss filed by defendant, Pilgrim's Pride Corporation, be, and is hereby, granted, and that all claims and causes of action asserted by plaintiffs, Rhonda Beshears, Andrea Compton, Diantha Crick, Jennifer Croslin, Johnny Crouch, Lavonna Davis, Johnnie Fletcher, Genafer Foree, Jeffrey Long, Jessica Taylor, Matilde Taylor, Paula Taylor, Ruth Verhegghe, Augustina Wisdom, Terry D. Beshears and Rhonda Beshears as parents and/or natural guardians on behalf of B.B., B.S., and D.S., minor children, and Dustin Lee Taylor and Jessica Taylor, as parents and/or natural guardians on behalf of C.T., a minor child, against defendant be, and are hereby, dismissed with prejudice.

The court further ORDERS that defendant's alternative motion for more definite statement be, and is hereby, denied.

SIGNED July 12, 2013.

JOHN McBRYDE
United States District Judge

21